UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERRY LEE WALKER,

          Plaintiff,

    v.

METTU,

          Defendant.

Case No. 24-cv-02252-RFL

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 35

**INTRODUCTION**

Plaintiff Jerry Lee Walker alleges in his 42 U.S.C. § 1983 action that in 2021 a dentist at San Quentin Rehabilitation Center (SQRC), Defendant Dr. Mettu, failed to provide properly fitting dentures which led to pain and loss of weight due to difficulty in eating. Defendant moves for summary judgment on the grounds that there is no genuine dispute as to any material fact and that she is entitled to qualified immunity. Plaintiff filed an opposition, Defendant filed a reply, and Plaintiff filed a sur-reply.

Defendant's summary judgment motion is GRANTED. Defendant presented undisputed evidence that Plaintiff received adequate dental care and did not file any medical requests or medical grievances notifying Defendant that he was suffering from a dental issue. To the extent Plaintiff seeks to amend the complaint with a new claim, any such claim is DENIED. Even looking at the merits of the new claim, it is undisputed that Defendant did not treat Plaintiff during this time, and he received sufficient care from another dentist at the prison. Plaintiff's conclusory allegation that a delay in treatment violated the Constitution without any specific details is insufficient.

1

## BACKGROUND

### Complaint

Plaintiff alleged as follows: He was provided new dentures in 2021, and in June 2021, he submitted a medical complaint that the dentures were not fitting properly and hurt every time he used them to eat. (Dkt. No. 7 at 2-3.) Plaintiff presented these issues to Defendant at an appointment. (*Id*. at 3.) Defendant was belligerent towards Plaintiff and even after seeking intervention through the grievance process, Plaintiff was unable to obtain properly fitting dentures. (*Id*.) Due to not having proper dentures, Plaintiff was unable to eat properly which caused pain and sores in his mouth and he lost weight and was suffering from nutritional deficiencies. (*Id*. at 4.)

### Undisputed Facts

The following facts are undisputed unless specifically noted otherwise. During the relevant time Plaintiff was housed at SQRC and Defendant was a dentist at that facility. (Dkt. No. 7 at 1, 3; Motion for Summary Judgment (MSJ), Mettu Decl. ¶ 1.) Plaintiff has worn full upper and full lower dentures since at least 1995. (MSJ, Archibald Decl. ¶ 9.) Defendant has treated Plaintiff at SQRC since approximately 2013. (Mettu Decl. ¶ 4.)

On September 10, 2019, Plaintiff was provided a comprehensive dental exam at the clinic by Defendant. (*Id*. ¶ 5, Ex. A.) Plaintiff complained of loose and worn lower dentures but did not report pain. (*Id*.) Defendant noted that the dentures were worn down and the existing dentures were approximately six years old. (*Id*.) Defendant recommended that Plaintiff begin the process to fabricate a new pair of dentures. (*Id*.)

It is Defendant's standard practice to educate patients on the process of denture fabrication, adjustment, and maintenance at the beginning of the process. (*Id*. ¶ 6.) It is also Defendant's standard practice to explain to patients that dentures will not function like natural teeth, that prolonged use of dentures will result in a shrinking bone ridge over time, and that adjustment of new dentures at least two or three times after delivery to the patient is a normal and routine part of the denture fabrication procedure. (*Id*.)

2

Plaintiff agreed to the treatment on September 10, 2019, and on that date signed a consent to dental treatment form that stated in part:

> The problems of wearing dentures have been explained to me including looseness, soreness, and possible breakage. . . . Follow-up appointments are a necessary part of maintenance and success of my dentures.
> . . .
>
> I understand that due to bone loss or other complicating factors, I may never be able to wear dentures to my satisfaction. I understand that no guarantee or assurance has been given that the proposed treatment(s) will be curative and/or successful or completed to my complete satisfaction. I agree to cooperate completely with the recommendations of the dentist while I am under his/her care. I understand that failure to follow the dentist's recommendations could result in less than optimum results.

(*Id*. ¶ 6, Ex. B.)  Plaintiff told Defendant that he did not want to start on impressions of his teeth that day due to soreness in his mouth.  (Mettu Decl. ¶ 5.)

On November 19, 2019, Defendant commenced the process for prosthetic evaluation for the new pair of full upper and lower dentures.  (*Id*. ¶ 7, Ex. C.)  Preliminary impressions for a new pair of dentures were made on that day.  (*Id*.)  On January 10, 2020, the prosthetic evaluation process was completed as Defendant took the final mandibular and maxillary impressions.  (*Id*. ¶ 8, Ex. D.)  Due to the start of the COVID-19 pandemic in 2020, all dental care at SQRC, except for emergency care, was temporarily suspended to prevent the spread of COVID-19.  (*Id*. ¶ 17.)

On October 16, 2020, Plaintiff was seen by non-defendant Dr. Cooley for jaw relation recording for full upper and lower dentures.  (Archibald Decl. ¶ 14, Ex. E.)  Dr. Cooley adjusted the denture wax rims for proper lip and mucosal support, established the orientation level of occlusal planes, adjusted wax rims, obtained a bite record, and determined midline.  (*Id*.)  On April 9, 2021, Plaintiff was seen again by Dr. Cooley for a comprehensive dental exam and wax try-in of the new full upper and lower dentures.  (*Id*. ¶ 15, Ex. F.)  Physiologic lip and mucosal support was observed, satisfactory sibilant and fricative speech by Plaintiff was demonstrated, proper occlusion was verified, and Plaintiff's acceptance of aesthetics was obtained.  (*Id*.)

On June 8, 2021, Dr. Cooley again saw Plaintiff for delivery of the new dentures. (*Id.* ¶ 16, Ex. G.) Dr. Cooley observed that the dentures seated properly, and tooth midline was verified. (*Id.*) Dr. Cooley checked and adjusted flange extensions and occlusion, achieved stability, verified satisfactory speech and pronunciation, and determined that the aesthetics were acceptable. (*Id.*) Dr. Cooley scheduled a follow-up appointment in two weeks for a possible reline of the dentures and he also instructed Plaintiff to submit a health care request form to obtain additional adjustments. (*Id.*) On June 11, 2021, Plaintiff was seen by Dr. Cooley for completion of a soft chairside reline with tissue conditioner due to lack of retention on the dentures which was causing Plaintiff pain. (*Id.* ¶ 17, Ex. H.) Dr. Cooley again instructed Plaintiff to submit a health care request form to obtain additional adjustments. (*Id.*)

On June 24, 2021, Plaintiff attended an appointment with Defendant for adjustment of the new dentures following the soft reline. (Mettu Decl. ¶ 10, Ex. E.) Upon arrival, Plaintiff informed Defendant that he wanted to refuse the appointment because he believed his new dentures did not work and felt they were not properly made. (*Id.*) Defendant suggested that Plaintiff allow her to adjust the new dentures, but Plaintiff refused. (*Id.*) He stated that even with adjustments, the new dentures would not be as comfortable as his old dentures, the dentures were not properly made, and he did not understand why the whole process took so long. (*Id.*) He then placed his new dentures on a table and walked out of the appointment. (*Id.*) Plaintiff concedes that he left the June 24, 2021, appointment, and refused to be examined. (Dkt. No. 36 at 1, 3.) Prior to the June 24, 2021, appointment, Plaintiff did not make any complaints to Defendant about any pain, discomfort, or difficulty eating caused by his old dentures, other than his 2019 statement that they were loose and worn down. (Mettu Decl. ¶ 13.)

Defendant did not see Plaintiff as a patient after the June 24, 2021, appointment. (*Id.* ¶ 14.) Defendant was never made aware or informed that Plaintiff was experiencing a serious dental need after June 24, 2021. (*Id.* ¶ 21.) Despite being informed that he could submit a health care request form to obtain medical care, his dental records do not show any request forms submitted after June 24, 2021. (Archibald Decl. ¶ 19.)

Plaintiff continued to use his old dentures after June 24, 2021, and was able to eat, except for hard foods such as apples or seeds. (MSJ, Zang Decl. ¶ 3, Ex. A at 44, 65, 67.) At his deposition, Plaintiff was unable to remember how his nutritional intake was deficient due to his dentures. (*Id*. at 69.) Plaintiff's medical records show that his Body Mass Index was consistently in the healthy range during the making of the new dentures and following his refusal of treatment. (Archibald Decl. ¶ 22.)

For inmates such as Plaintiff who are 50 years of age or older, they are sent notices informing them that they can submit a health care request form to obtain a comprehensive dental exam. (*Id*. ¶ 20.) Plaintiff was sent notices on January 25, 2022, November 28, 2022, and October 9, 2023, but there is no record of him requesting a dental appointment in that time. (*Id*.)

Plaintiff concedes that he did not file any health care request forms after June 24, 2021. (Dkt. No. 36 at 3.) He contends that he submitted multiple inmate grievance forms from 2020 to June 2021, raising the dental pain and inability to eat. (*Id*. at 2-3.) He does not include any of these grievances with his filings. Attached to his complaint is a grievance that alleges Defendant was rude to him at the June 24, 2021, appointment, where he sought to address why his new dentures did not fit correctly and were causing pain. (Dkt. No. 2 at 7-8.) Plaintiff identifies no other grievances regarding dental issues, and a search of Plaintiff's health care related grievances did not reflect any grievances related to dental issues. (Reply, Martin Decl. ¶¶ 5-6, Ex. A.)

### STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

5

issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

## DISCUSSION

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*). A determination of a "deliberate indifference" claim involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Id.* at 1059.

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily

6

activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60.

A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer* at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but did not actually know, the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

In the operative complaint, Plaintiff argued that Defendant was deliberately indifferent by not providing adequate dental care at the June 24, 2021, appointment and after. (Dkt. No. 7 at 2-3.) It is undisputed that Plaintiff refused to be examined and receive dental care on June 24, 2021, and left his new dentures with Defendant. It is also undisputed that Plaintiff submitted no medical requests for dental care after June 24, 2021, and that Defendant was unaware of Plaintiff's difficulties. Defendant was also able to eat most foods with his old dentures and his Body Mass Index was in the healthy range. Plaintiff only submitted an inmate appeal, not a medical request, related to the June 24, 2021, appointment. This appeal would not alert Defendant that Plaintiff required additional care. Nor did Plaintiff seek additional dental care after receiving several notices that he was entitled to dental examinations due to his age. Defendant has met her burden in demonstrating the absence of a genuine issue of material fact. Assuming that there was a serious medical need, Plaintiff did not take appropriate steps to make Defendant aware of the issue to meet the deliberate indifference standard.

Plaintiff has not met his burden in demonstrating a genuine issue for trial. In his opposition, Plaintiff does not argue that his rights were violated during and after the June 24, 2021, appointment. (Dkt. No. 36 at 3.) He argues that even if there was not a constitutional violation at the June 24, 2021, appointment and after, the Eighth Amendment had already been violated due to the conduct in the year prior to the appointment. (*Id.* at 3-4, 6.) This claim was

not in the complaint, and the Court did not order service related to any such claim.  To the extent, Plaintiff's opposition to summary judgment could be construed as a motion to amend, the request is denied.  The time to amend has long passed, and Plaintiff has not presented any arguments on why the Court should grant leave to amend at this stage in the case.

Even looking at the merits of this new claim for the lack of proper dental care in the year prior to June 2021, Plaintiff has not demonstrated that anyone at the prison was deliberately indifferent to his serious dental needs.  Defendant did not treat Plaintiff and had no interactions with him from June 2020 to June 2021.  Defendant only treated Plaintiff in September 2019, November 2019, and January 2020.  There are no allegations of any improper care at those appointments, and the undisputed facts show that Defendant started the process for Plaintiff to receive new dentures.  Defendant would be entitled to summary judgment for this new claim, if the amendment was permitted.

Plaintiff identifies no other Defendants who provided inadequate dental care during this time or any specific allegations.  He only states that the delay in obtaining the new dentures violated his rights.  While there was a delay in 2020 due to COVID-19, Plaintiff was seen by non-defendant Dr. Cooley in October 2020, and April 2021, who fitted him with the new dentures.  It is undisputed that Plaintiff was using his old dentures during this time and could eat most foods, and his Body Mass Index was consistently in the healthy range.  Plaintiff has not elaborated how this delay violated the Eighth Amendment.  His conclusory allegations with no support are insufficient.  "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."  *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).  The "mere delay of [treatment], without more, is insufficient to state a claim of deliberate medical indifference. . . . [Prisoner] would have no claim for deliberate medical indifference unless the denial was harmful."  *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Furthermore, it is undisputed that Plaintiff did not submit any medical request forms or

health related grievances.  There is thus no evidence that anyone at the prison knew he needed dental care.  Summary judgment is granted.

## QUALIFIED IMMUNITY

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011) (quotation and citation omitted).  Thus, "to overcome qualified immunity, Plaintiffs must show that [defendants] (1) 'violated a federal statutory or constitutional right' and (2) 'the unlawfulness of their conduct was clearly established at the time.'"  *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).

The Court has not found the violation of a constitutional right.  Even if Plaintiff was suffering from a serious medical need, he did not alert anyone at the prison, so it would not be clear to Defendant or any reasonable official that Plaintiff required dental aid and that the care provided was lacking and would be unlawful.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED.  (Dkt. No. 35.)  The Clerk shall terminate Dkt. No. 35, enter judgment in favor of Defendant, and close the file.

**IT IS SO ORDERED.**

Dated: March 23, 2026

RITA F. LIN
United States District Judge